UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RENALDO K. NORTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| VS. | ) | |
| | ) | 3:14-CV-1490-G |
| TUCKER ENTERTAINMENT, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the court is the defendant's motion to dismiss or stay the action and to compel arbitration (docket entry 7). For the reasons stated below, the motion to compel arbitration is granted. The motion to stay the case during the abrbitration is also granted.

I. BACKGROUND

This case concerns claims for overtime compensation and other relief under the Fair Labor Standards Act ("FLSA"). Complaint and Demand for Jury Trial ("Complaint") ¶ 1 (docket entry 1). The defendant, Tucker Entertainment, LLC ("Tucker"), operates "gentlemen's clubs" throughout Dallas, Texas. *Id*. ¶ 8. The

plaintiff, Renaldo K. Norton ("Norton"), worked as a "disk jockey" for Tucker at one of its clubs. *Id.* ¶ 11. Norton alleges that his employment status satisfied the requirements of the FLSA but that Tucker nonetheless failed to comply with the act. *Id.* ¶¶ 12-15. Specifically, Norton seeks unpaid minimum wages and overtime pay required under the act. *Id.* ¶ 14. Plaintiff filed this case on April 23, 2014. See *id.*

After the complaint was filed, but before Tucker was served with process, Norton signed a license and lease agreement ("LLA") with Tucker. Defendant's Motion to Dismiss and/or Stay This Action and to Compel Arbitration with Incorporated Memorandum of Law ("Defendant's Motion to Dismiss") at 1, 4 (docket entry 7). The agreement contains an arbitration clause providing in relevant part:

> The parties agree that this Agreement is subject to binding arbitration pursuant to the Federal Arbitration Act (the "FAA"), and any disputes under this Agreement as well as any disputes that may have arisen at any time during the relationship between the parties, will be governed and settled by an impartial independent arbitrator appointed by the American Arbitration Association . . . .

Appendix in Support of Defendant's Motion to Dismiss and/or Stay This Action and to Compel Arbitration with Incorporated Memorandum of Law ("Defendant's Appendix"), Attachment 1 ¶ 22 (docket entry 8).

The parties present differing accounts of this agreement. According to Norton, Tucker made him sign the documents immediately or risk being fired. Plaintiff's

Response to Defendant's Motion to Dismiss ("Plaintiff's Response") ¶¶ 3-4 (docket entry 12). This left Norton with insufficient time to read the documents or to consult his attorney before signing. *Id.* Although he ultimately signed the documents, Norton avers that Tucker fired him less than an hour later. *Id.* ¶¶ 4, 6. Tucker, by contrast, maintains that its representative presented a "truthful document in normal communications between parties with a pre-existing relationship." Defendant's Motion to Dismiss at 4.

After receiving service of the complaint on August 4, 2014, Tucker filed the present motion on August 25, 2014. *See* Return of Service (docket entry 6); Defendant's Motion to Dismiss. The court now turns to the disposition of this motion.

## II. ANALYSIS

### A. Judicial Interpretation of the Federal Arbitration Act's Text

In relevant part, the Federal Arbitration Act ("FAA") reads:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, . . ., or an agreement in writing to submit to arbitration *an existing controversy* arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract.

Federal Arbitration Act, 9 U.S.C. § 2 (emphasis added). Courts have concluded that if an arbitration clause contains retroactive language, it can apply to controversies

preceding its existence.  See, *e.g.*, *Kristian v. Comcast Corporation*, 446 F.3d 25, 33 (1st Cir. 2006) ("Read most naturally, the phrase 'or the services provided' covers claims or disputes that do not arise 'out of this agreement' and hence are not limited by the time frame of the agreements."); *Belke v. Merrill Lynch, Pierce, Fenner & Smith*, 693 F.2d 1023, 1025 n.4, 1028 (11th Cir. 1982) (concluding that the phrase "any controversy between us arising out of your business or this agreement" covered acts occurring before the execution of the arbitration agreement), abrogated on other grounds by *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985); *Beneficial National Bank v. Payton*, 214 F. Supp. 2d 679, 688-89 (S.D. Miss. 2001) ("If [an] arbitration clause contains retroactive time-specific language, *e.g.*, a phrase reading 'this agreement applies to all transactions occurring before or after this agreement,' then [the court] may apply the arbitration provision to events relating to past events.  Or, if the arbitration clause contains language stating that it applies to 'all transactions between us' or 'all business with us,' then [the court] may apply the arbitration clause retroactively.") (quoting *Kenworth of Dothan, Inc. v. Bruner-Wells Trucking, Inc.*, 745 So. 2d 271, 275 (Ala. 1999)).  This interpretation appears consistent with the text of the statute italicized above.

In the present case, Norton's claims arise from circumstances preceding execution of the arbitration agreement.  But unlike in the above cited cases, Norton's

claims were already pending in this court at the time he signed the LLA. Plaintiff's Response ¶¶ 2-4. Below, the court explains why this fact makes no difference.

### B. Standard Review For a Motion to Compel Arbitration

To determine whether to compel arbitration, a court conducts a two-step inquiry. First, the court must determine if the parties agreed to arbitrate the specific dispute in question. *OPE International LP v. Chet Morrison Contractors, Incorporated*, 258 F.3d 443, 445 (5th Cir. 2001). The existence of a contract containing an arbitration clause demonstrates agreement among the parties. However, courts must be certain to verify that the "dispute in question falls within the scope of the arbitration agreement" before proceeding to step two. *OPE International LP*, 258 F.3d at 445.

If an arbitration clause applies to the dispute in question, the court then assesses "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Mitsubishi Motors Corporation v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985). For example, parties opposing arbitration will often cite federal or state statutes which they argue prevent arbitration of certain claims. *OPE International LP*, 258 F.3d at 446. When conducting its inquiry, a court must be conscious that the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration

. . . ." *Id.* at 445 (citing *Moses H. Cone Memorial Hospital v. Mercury Construction Corporation*, 460 U.S. 1, 24-25 (1983)).

The Supreme Court has emphasized that throughout this two-step inquiry, but principally when considering the existence of an arbitration clause and the scope of its coverage, courts must distinguish between challenges directed to an arbitration clause's validity and challenges to an entire contract's validity. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006). The FAA allows courts to grant a jury trial when "the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue." 9 U.S.C. § 4. Based on this statutory language, the Supreme Court concluded the FAA allows courts to consider only challenges specifically directed at an arbitration clause. *Buckeye Check Cashing*, 546 U.S. at 445 ("[I]f the claim is fraud in the inducement of the arbitration clause itself -- an issue which goes to the making of the agreement to arbitrate -- the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally.") (quoting *Prima Paint Corporation v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967)).

### C. Application of Law to Norton's FLSA Claims

The arbitration clause in the LLA states that "any disputes that may have arisen at any time during the relationship between the parties . . . [are] subject to binding arbitration pursuant to the Federal Arbitration Act." Defendant's Appendix,

Attachment 1 ¶ 22.  Even absent the parties' explicit agreement, the FAA would apply to the arbitration clause because the statute's coverage is as broad as that allowed under the Commerce Clause.  See *Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 274 (1995) (describing the FAA's reach as "coinciding with that of the Commerce Clause") (citing *Perry v. Thomas*, 482 U.S. 483, 490 (1987)).  Therefore, the court proceeds to apply the two-step inquiry to the present dispute.

      1.  *Step One:  The Parties Entered a Contract Covering the FLSA Claims*

Both parties agree that Norton signed the LLA.  Plaintiff's Response ¶ 4. Norton asserts that the contract is unconscionable, void under public policy, and void for lack of consideration.[1]  *Id.* ¶¶ 26-28, 29-30.  Nearly all of Norton's arguments are directed at the contract generally.  Plaintiff's Response ¶¶ 26, 29, 30 (stating that "the *contract* is void for violating public policy"; "the *contract* is procedurally unconscionable because the contract formation process is obviously marked by a 'lack of meaningful choice'"; and "*the agreement* is substantively unconscionable") (emphasis added).  As the Supreme Court originally stated in *Prima Paint Corporation*, 388 U.S. at 403-04, and reaffirmed in *Buckeye Check Cashing, Incorporated*, 546 U.S. at 444-45, a federal court is not permitted to consider these arguments; rather, such arguments should be left for the arbitrator.

---

[1] The court liberally construes the section of Norton's response entitled, "The Parties Did Not Agree to Arbitrate this Case," to divine an argument concerning absence of consideration.  Plaintiff's Response ¶¶ 20-22.

The court also disagrees with Norton's arguments to the extent they challenge the arbitration clause specifically. Viewed alone, the arbitration clause is supported by consideration.[2] The Texas Supreme Court has stated, "An arbitration clause is not illusory unless one party can avoid its promise to arbitrate by amending the provision or terminating it altogether." *In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010). A "writing signed by each of the parties hereto" is needed to amend the present arbitration clause, Defendant's Appendix, Attachment 1 ¶ 23, and thus the clause is supported by consideration.

Furthermore, a minor tension between the arbitration clause's text and the FLSA's "attorney's fees and costs" provision does not justify voiding the arbitration clause on public policy grounds. *See* Plaintiff's Response ¶¶ 27-28; 29 U.S.C. § 216(b). Failing to enforce an arbitration clause because of minute inconsistencies between the clause's text and a federal statute would substantially curtail the "national policy favoring arbitration." *Buckeye Check Cashing*, 546 U.S. at 443. This establishes that the "interest in [the clause's] enforcement" is *not* "clearly outweighed . . . by a public policy against the enforcement of such terms." RESTATEMENT

---

[2] The section of Norton's response entitled, "The Parties Did Not Agree to Arbitrate this Case," uses both the "documents" and the "arbitration agreement" to describe the papers Norton signed. The court interprets the former terminology as an argument attacking the entire contract. If this is the case, the argument fails for the reasons discussed above. However, Norton might have intended the latter terminology (*i.e.*, the "arbitration agreement") to be an argument directed at the arbitration clause specifically.

(SECOND) OF CONTRACTS § 178 (1981). The court is confident that an arbitrator possesses sufficient skill and expertise to address such conflicts when they arise.

Finally, any procedural unconscionability challenge to the arbitration clause is indistinguishable from a similar challenge to the entire contract.[3] Such artful pleading cannot overcome the prohibition on challenges to an entire contract. See *Buckeye Check Cashing, Incorporated*, 546 U.S. at 444-45.

Given the presence of a valid arbitration clause, the court next addresses whether the text of the LLA covers Norton's FLSA claims. The court concludes that it does. The arbitration clause applies to "any disputes under this Agreement as well as any disputes that may have arisen at any time during the relationship between the parties." Defendant's Appendix, Attachment 1 ¶ 22. The phrase "during the relationship between the parties" establishes the arbitration clause's broad coverage. *Id*. While the term "relationship" is undefined in the LLA, it is unnecessary to consult a dictionary to understand its meaning. In the context of the LLA, relationship refers to the parties' preexisting association as "disk jockey" and club owner. Complaint ¶¶ 8, 11. Norton's FLSA claims stem from his work at the

---

[3] The court notes that Norton's substantive unconscionability argument appears to be indistinguishable from his procedural unconscionability argument. *See* Plaintiff's Response ¶¶ 29-30. But even if Norton presented the argument in a more cogent fashion, the court finds nothing "sufficiently shocking or gross" in the arbitration clause's terms, *Ski River Development, Inc. v. McCalla*, 167 S.W.3d 121, 136 (Tex. App.--Waco 2005, pet. denied), to hold it unconscionable.

"gentlemen's club" and therefore arose "during the relationship between the parties." *Id.* ¶ 8.

The court concludes it would be ill-advised to distinguish between pending and non-pending claims when applying the arbitration clause. The LLA's text makes no such distinction. Similarly, the FAA fails to bifurcate "existing controversies" into those pending and those not pending in courts. *See* 9 U.S.C. § 2. Examples of courts compelling arbitration of claims that were pending prior to the formation of the relevant arbitration agreement are rare but not unprecedented in the Fifth Circuit. See *Bellizan v. Easy Money Louisiana, Inc.*, No. Civ.A. 00-2949, 2002 WL 1066750, at *5 (E.D. La. May 29, 2002) (granting a motion to compel arbitration even though the plaintiff already had a suit pending at the time she signed the loan agreements containing the arbitration clause). But even in the absence of similar cases, the LLA's text and the FAA's command to "rigorously enforce agreements to arbitrate" support the court's conclusion. *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (quoting *Dean Witter Reynolds, Inc.*, 470 U.S. at 221).

### 2. *Step Two: No External Legal Constraints Bar the Arbitration Clause's Enforcement*

The court finds no external constraints that would render ineffective the parties' agreement to arbitrate. For starters, the Fifth Circuit has found "no evidence that Congress intended to preclude arbitration of FLSA claims in the text or legislative history of the statute." *Carter v. Countrywide Credit Industries, Inc.*, 362 F.3d

294, 297-98 (5th Cir. 2004) (citing *Kuehner v. Dickinson & Company*, 84 F.3d 316, 319-20 (9th Cir. 1996)).  This ruling applies to all of Norton's FLSA claims, including any claim for retaliation under the statute.  Plaintiff's Response ¶¶ 24-25.

Furthermore, the court disagrees with Norton's contention that he did not waive his jury demand.  Agreeing to arbitrate specific claims inevitably removes, or revokes, a party's right to a jury trial under the Seventh Amendment for those claims.  In other words, upon signing the contract, it was clear that Norton gave up his right to a jury trial.  The Fifth Circuit, however, does not even demand such clarity.  When discussing waiver of the Seventh Amendment's right to a jury trial, the court stated, "[T]here is no requirement that an arbitration provision must clearly and unmistakably express the waiver of an individual's rights." *American Heritage Life Insurance Company v. Orr*, 294 F.3d 702, 711 (5th Cir. 2002), *cert. denied*, 537 U.S. 1106 (2003).

Prohibiting Norton's jury waiver would also conflict with the "national policy favoring arbitration" expressed in the FAA.  *Buckeye Check Cashing*, 546 U.S. at 443.  Therefore, the court exercises its power under Rule 39(a)(2) of the Federal Rules of Civil Procedure to withdraw the jury demand because it "finds that [for] . . . all of [the] issues there is no federal right to a jury trial."  FED. R. CIV. P. 39(a)(2).

III. <u>CONCLUSION</u>

For the reasons stated above, the motion to compel arbitration is **GRANTED**. The Federal Arbitration Act directs courts to stay proceedings until the arbitration process is completed. *See* 9 U.S.C. § 3. Therefore, the motion to stay the present action is also **GRANTED**.

Within thirty days of this date, Tucker (*i.e.*, the party seeking arbitration of this dispute) shall file and serve a demand for arbitration with the American Arbitration Association. Failure to do so will result in a dissolution of the stay granted above.

**SO ORDERED**.

October 8, 2014.

_____
A. JOE FISH
**Senior United States District Judge**